COLEMAN, BALOGH & SCOTT LLP
ETHAN A. BALOGH, No. 172224
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Telephone: 415.391.0440
Facsimile: 415.373.3901
eab@colemanbalogh.com

Attorneys for Defendant
ELIJAH COOPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 13 Cr. 693 SI |
| Plaintiff, | TRIAL MEMORANDUM AND MOTIONS IN LIMINE |
| v. | Pretrial:        April 21, 2015 |
| ELIJAH COOPER, | Time:            3:00 p.m. |
| Defendant. | Before the Honorable Susan Illston United States District Judge |
| | **RULE 104 HEARING REQUESTED** |

TO:  MELINDA HAAG, UNITED STATES ATTORNEY, and BENJAMIN TOLKOFF, MARC WOLF, AND BRIGID MARTIN, ASSISTANT UNITED STATES ATTORNEYS:

PLEASE TAKE NOTICE that on April 21, 2015 at 3:00 p.m., or as soon thereafter as he may be heard, defendant Elijah Cooper, by and through his counsel, will and hereby does ask this Court, pursuant to the Fifth and Sixth Amendments to the United States Constitution, the Federal Rules of Criminal Procedure, and the Federal Rules of Evidence, to enter an Order granting the motions *in limine* listed below. Mr. Cooper also submits herewith his Trial Memorandum.

**MOTIONS IN LIMINE**

Mr. Cooper respectfully asks the Court to enter the following Orders:

1. An ORDER excluding the proposed expert testimony of FBI CAST Task Force Officer Hector Luna based on the Government's failure to provide proper Notice as required by Fed. R. Crim. P. 16(a)(1)(G), or in the alternative, limiting his testimony to the opinions actually disclosed in the Government's Notice;

2. An ORDER excluding the introduction of any documentary evidence regarding cell-site location data that has not yet been provided to the defense.

3. An ORDER excluding the proposed expert testimony of chemist Tina Wu Chang, except for the opinion that the substance she tested was in fact cocaine base, based on the Government's failure to provide proper Notice as required by Fed. R. Crim. P. 16(a)(1)(G), or in the alternative, limiting her testimony to the opinions actually disclosed in the Government's Notice;

4. An ORDER excluding the proposed expert testimony of chemist Jason Otis, except for his opinion that the substance he tested was in fact cocaine base, based on the Government's failure to provide proper Notice as required by Fed. R. Crim. P. 16(a)(1)(G), or in the alternative, limiting his testimony to the opinions actually disclosed in the Government's Notice;

5. And ORDER excluding the proposed expert testimony of DEA Special Agent David Mateer;

6. And ORDER excluding the proposed expert testimony of Barry Stewart based on the Government's failure to provide proper Notice as required by Fed. R. Crim. P. 16(a)(1)(G), or in

1  the alternative, limiting his testimony to the opinions actually disclosed in the Government's

2  Notice;

3       7.  An ORDER precluding the Government from offering any alleged co-conspirator

4  statements because the Government did not timely produce summaries of any statements it would

5  seek to admit as required by Local Rule 16-1 and this Court's Scheduling Order;

6       8.  An ORDER precluding the Government from offering any evidence pursuant to Fed.

7  R. Crim. P. 404(b) because the Government did not produce summaries of any such evidence it

8  would seek to admit as required by Local Rule 16-1 and this Court's Scheduling Order;

9       9.  An ORDER precluding the Government from introducing evidence regarding the

10 activities of Henry Tobias, who is not an alleged co-conspirator of Mr. Cooper and because the

11 Government's April 7 discovery production is untimely;

12      10.  An ORDER precluding the Government from entering evidence or commentary

13 regarding gangs;

14      11.  An ORDER precluding the Government from offering evidence regarding any law

15 enforcement officer's prior knowledge of and/or interactions with Mr. Cooper;

16      12.  An ORDER precluding the introduction of hearsay evidence as reflected on the

17 Government's exhibit list; the Court should also limit the Government's evidence to the evidence

18 disclosed on its exhibit list;

19      13.  An ORDER directing the Government to inform its witnesses of each of the Court's

20 pretrial rulings, and to confirm that it has done so before the commencement of trial;

21      14.  An ORDER precluding the Government from presenting the Second Superseding

22 Indictment to the petit jury; and

23      15.  An ORDER permitting Mr. Cooper to dress in civilian clothes for trial.

24      These motions are based on the instant Notice of Motions, the Memorandum that follows,

25 the Declaration of Ethan A. Balogh Filed April 14, 2015, the files and records of this case, the

26 ////

27 ////

28 ////

evidence adduced and the argument made at the hearing on these motions, and such further argument and memoranda as may later be presented.

Respectfully submitted,

DATED: April 14, 2015                    COLEMAN & BALOGH LLP


                                         /s/ E A Balogh
                                         By: ETHAN A. BALOGH
                                         235 Montgomery Street, Suite 1070
                                         San Francisco, CA 94014

                                         Attorneys for Defendant
                                         ELIJAH COOPER

3

1                                    **TRIAL MEMORANDUM**

2   **A.      Case Overview.**

3            This case will come down to one issue: on February 5, 2013, did Elijah Cooper drive a

4   white Mercedes Benz to a controlled buy in the Bayview District of San Francisco and twice

5   provide crack cocaine to Anthony Knight in the midst of that controlled buy?

6            The facts are simple.  On February 5, 2013, Anthony Knight sold cocaine to an

7   undercover operative working for the San Francisco Police Department ("SFPD") and the

8   Federal Bureau of Investigation ("FBI").  Twice during that transaction, an individual in Johnny

9   Trammel's white Mercedes Benz drove to the same parking lot where Knight and the operative

10  had parked, and this individual twice met with Knight, but not with the operative.  Although,

11  almost immediately after the controlled buy the operative identified Tony Befford as the driver of

12  the Mercedes, the Government nevertheless alleges that Mr. Cooper was the driver of the

13  Mercedes, and that Mr. Cooper twice provided Knight with cocaine to sell to the operative on

14  those two occasions, and had used a mobile telephone to coordinate that transaction.  Based on

15  these allegations, the Government contends that Mr. Cooper conspired with Knight to distribute

16  cocaine on February 5, 2013, in fact distributed cocaine to Knight for sale to the operative on that

17  date, and used his mobile telephone to facilitate that transaction.

18           Mr. Cooper denies these allegations and will demonstrate at trial that he was not the

19  driver of the Mercedes, did not provide cocaine to Knight, and did not use a mobile telephone to

20  facilitate that transaction because he did not participate in that transaction.

21           Despite the narrowness of this case—or perhaps because of it and the weakness of its

22  case—the Government has informed Mr. Cooper that it intends to seek the introduction of a host

23  of evidence that, upon reasoned analysis, must be deemed irrelevant and inflammatory, and is

24  offered in derogation of, *inter alia*, of Federal Rules of Evidence 401, 402, 403, and 404.  So too,

25  it has provided a wealth of disclosures about its intent to offer expert testimony, but without

26  providing Mr. Cooper a summary of the opinions it will offer, in derogation of Fed. R. Crim. P.

27  16(a)(1)(G).  This evidence forms the primary subjects of the motions *in limine* that follow.  For

28  ////

                                           1

1  the reasons stated below, Mr. Cooper respectfully requests the Court to grant his motions *in*

2  *limine* in order to ensure a fair, just, and efficient trial of this cause.

3  **B.      The Government's discovery abuse.**

4          In July 2014, the Court heard the first round of motions in this case, including Mr.

5  Cooper's challenge that at that point—eight months into the case and following Mr. Cooper's

6  prompt demand for discovery—the Government (which had declared discovery compliance)

7  should be limited at trial to the evidence it had produced as of that date.  During that hearing,

8  Government counsel demurred, declaring discovery compliance, as follows:

9              And I've been giving it [discovery] to Mr. Balogh on his demand.  I have
             not been trying to play fast or loose, and I have not been trying to play hide
10            the ball with discovery in this case.

11  ECF No. 93 at 35:21-24 (RT of July 24, 2014 motions hearing).  As shall be

12  demonstrated below, Government counsel's statement has now been proven untrue.

13          At approximately 3:00 p.m. on April 8, 2015, Mr. Cooper received via Federal Express a

14  package from the Government containing 21 DVDs and nearly 90 pages of new police reports in

15  this case.  *See* Balogh Declaration Filed April 14, 2015 ("Balogh Decl.") Ex. F.[1]  The first whiff

16  of misconduct is shown by the Government's justification for this production; it claimed the

17  production was made "pursuant to Judge Illston's minute order of February 27, 2015."  *Id*.  But

18  that Order required "[t]he government [to] produce 404(b), Rule 16-1 and exculpatory evidence

19  by 4/7/15" and the majority of the Government's production has nothing to do with Rule of

20  Evidence 404(b), Local Rule 16-1, or exculpatory evidence.  And some of these DVDs do

21  contain exculpatory information, the Government tried to smuggle in 10 DVDs that have nothing

22  to do with the Court's February 27 Order.  Rather, of the DVDs included in the Government's

23  late production, five concern evidence about Henry Tobias's activities,[2] and two contain pole

24

25          [1]A letter cataloging the contents that would be received on April 8 was presented to Mr.

26  Cooper at 5:08 p.m. on April 7, 2015.  Balogh Decl. ¶ 7.

27          [2]The Second Superseding Indictment, which was returned the same day as the

28  Government's 23rd hour production, does *not* name Tobias as an alleged co-conspirator.  *See* ECF

(continued...)

2

1   camera footage purporting to contain inculpatory evidence against Mr. Cooper, and four

2   contained surveillance photos from the February 5 controlled buy.[3]  In other words, the

3   Government's attempt to justify this gargantuan late production on the Court's Order stands as

4   consciousness of guilt.

5         As set forth below, the Court should preclude the Government from offering in its case-

6   in-chief *any* of the untimely produced discovery.[4]

7   ////

8   ////

9   ////

10   ////

11   ////

12   ////

13   ////

14   ////

15   ////

16   ////

17   ////

18 ──────────────────────

19     [2](...continued)

20   No. 126.

21     [3]While Mr. Cooper notes that the Government should have produced the 10 DVDs

22   relating to Knight's activities with CW 1, he raises no objections to the production of those 10 or the surveillance photos showing Johnny Trammel, not Mr. Cooper, as driving the white

23   Mercedes Benz reported to be involved in the February 5 controlled buy, as that evidence is exculpatory.

24     [4]As the Court is aware from the proceedings in this case, Mr. Cooper's detention limits

25   greatly his ability to review discovery, and requires a number of wickets to be navigated to have him review materials in the presence of counsel.  The delay resulting from this

26   circumstance—one known to the Government for more than a year—as well as the insufficient

27   time to investigate and prepare a defense to the newly (and untimely) produced evidence, including the challenges in having the contraband obtained from Tobias tested by a chemist,

28   provide further support for the exclusion of evidence as set forth herein.

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTIONS IN LIMINE

**MIL 1:** **The Court should preclude the Government from offering the proposed expert testimony of FBI CAST Task Force Officer Hector Luna based on the Government's failure to provide sufficient notice pursuant as required by this Court's Order and by Federal Rule of Criminal Procedure 16(a)(1)(G).**

### A.    The Applicable Legal Standards.

Federal Rule of Criminal Procedure 16(a)(1)(G) provides:

> At the defendant's request, the government must give to the defendant *a written summary of any testimony* that the government intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . The summary provided under this subparagraph *must describe the witness's opinions*, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G) (emphases added).  These words are plain and easily understandable: the Government must provide a written summary of the testimony, and in that summary must set forth the witness's opinions.  This reality was further emphasized by the Advisory Committee in 1993, when it amended this Rule to require these disclosures "upon request" and stated clearly:

> [T]he requesting party is entitled to a summary of the expected testimony. This provision is intended to permit more complete pretrial preparation by the requesting party.  For example, this should inform the requesting party whether the expert will be providing only background information on a particular issue or whether the witness will actually offer an opinion. . . [P]erhaps most important, the requesting party is to be provided with a summary of the bases of the expert's opinion.

1993 Amendment, Advisory Notes.

The Ninth Circuit has upheld the exclusion of the Government's proffered experts as a sanction for the prosecutor's failure to comply with Rule 16 and the district court's pretrial scheduling orders.  *United States v. W.R. Grace*, 526 F.3d 499, 513 (9th Cir. 2008) (en banc).  In so holding, the Court emphasized that under Rule 16, the Government's expert disclosures must set forth not only the proposed expert's opinions, but also the "bases and reasons for those opinions."  *Id.*  Because the Government failed to satisfy its obligations, the Court found no abuse of discretion in excluding those witnesses whose opinions were inadequately disclosed.  *Id.*
////

4

In *United States v. Birdsbill*, the district court reached a similar result in analyzing a defendant's reciprocal expert disclosure obligations under Rule 16, which, if triggered, are identical to those of the government. *See* 243 F. Supp. 2d 1128, 1130-31 (D. Mont. 2003). There, the court precluded an expert witness where a last-minute expert disclosure failed to identify the witness's opinion. *Id.*

The Court should enforce the rules against the Government in this case.

### B. The Government's proposed expert notice is untimely and insufficient.

The Court should exclude the proposed testimony of Luna based on the Government's patently deficient disclosure. The facts are straightforward.

On November 25, 2013, Mr. Cooper requested discovery from the United States, including disclosure of:

> The identity of any expert witnesses and written summaries of that testimony that the Government intends to present at trial pursuant to Fed. R. Evid. 702, 703 or 705. *See* Fed. R. Crim. P. 16(a)(1)(G).

Declaration of Ethan A. Balogh Filed April 14, 2015 ("Balogh Decl.") Ex. A.

On April 7, 2015, the Government filed notice disclosing the proposed expert testimony of FBI CAST Task Force Officer Hector Luna. ECF No. 128; *see also* Balogh Decl. Ex. B. In sum, the Government's disclosure provides no written summary of Luna's opinions or the bases and reasons for them. Rather, the Government provides a description of the subject matters Luna will testify about instead of a summary of the testimony he will provide and the opinions he will offer.

More directly, as disclosed by the Government:

> Hector Luna will provide expert testimony as to cellular telephone analysis. Specifically, Agent Luna will explain (1) how cellular telephones and cellular telephone networks operate; (2) the information contained in cellular telephone records, also known as call detail records; and (3) that it is possible to approximate to a fair degree of accuracy the location of a cellular telephone based on information contained in call detail records, based on the cell site location accessed for a particular call, along with any attendant cell sector information.

> Agent Luna will testify that he conducted cell site location analysis for the cellular phones assigned call numbers 415-374-3876, 415-410-9786, based on data relating to February 5, 2013, March 3, 2013, March 9, 2013 and

5

1
2

> March 18, 2013, which will show that signals from these cell phones were received by cell site towers in the Bay Area. Agent Luna will go those locations to determine which cell towers are used at those locations. . . .

3
4
5
6

> Agent Luna will use exhibits which plot the cell towers utilized by these cell phones. The location of all cell towers and the underlying call detail records associated with these cell phones have been provided to the defendants in discovery. Agent Luna's report with these exhibits will be provided to the defendants forthwith. The government will provide an updated disclosure pursuant to Rule 16 if we anticipate that Agent Luna's testimony will encompass additional cellular phones.

7   *Id.* As is plain, the Government's notice does nothing to set forth the opinions Luna will provide,

8   or the bases for the opinions he will provide, in direct contravention of its discovery obligations.

9   The Government's violation of its discovery violations generally, and its duty to disclose

10   expert testimony specifically, is nothing new in this district. As Judge Alsup ruled when

11   addressing the deficiencies of the Government's expert disclosures by this same unit at the Office

12   of the United States Attorney:

13
14
15
16
17
18
19

> *First*, the government's summary **failed to describe its expert witnesses' opinions as required by the rule**. Instead, it only listed topics that each witness will cover, and referred by bates numbers to documents that impliedly may contain the witnesses' opinions. ***Rule 16 requires that each opinion be specified.*** *Second*, the government's summary failed to provide "the bases and reasons for those opinions" as required by the rule. In other words, ***the summary should list each specific opinion and under the specific opinion list the bases and reasons.*** The bases and reasons must be sufficient to allow counsel to frame *Daubert* motions (or other motions in limine), to prepare for cross-examination, and to allow for possible counter experts to meet the purport of the case-in-chief testimony. *See* Advisory Committee Comment to 1993 Amendment to Rule 16.

20   *United States v. Cerna*, Case No. 08 Cr. 730 WHA, ECF No. 774 at 6:1-10 (emphases added).

21   For similar reasons, Judge Breyer excluded expert testimony in *United States v. Baker*,

22   Case No. 09 Cr. 966 CRB. *See* Balogh Decl. Ex. C. In short, because the Government failed to

23   disclosed the proposed opinions of three proposed experts, Judge Breyer excluded the testimony

24   of two in full (Ellmore and Bartholomew), provided the Government the opportunity to cure the

25   problems with the third (Nguyen) while reserving the right to provide other remedies based on

26   the Government's discovery violations at the time of trial. *See id.*

27   Based on this history with this unit of the prosecutor's office—and considering the

28   Government's studied recalcitrance with regard to providing information in this case, even as

1   detailed by this Court's Orders recounting portions of that recalcitrance, *see* ECF Nos. 87,

2   117—the Government neither can offer any proper reason for its deficient expert notices here,

3   nor complain with the sanction of preclusion.[5]  Indeed, Mr. Cooper cannot—even at this late

4   date—either evaluate the Government's expert presentation, identify and prepare any rebuttal

5   expert, or even mount an assessment under *Daubert* because he has no idea as to what opinions

6   the Government seeks to present to the jury.  Indeed, even at this late date, Mr. Cooper has no

7   _____

8       [5]The Government's notice for Luna also includes a description of subject matters to be

9   testified by a partially identified "expert" named "Hansen", as follows:

10          Agent Hansen will testify about the methods of cellular telephone
            communications and how those communications are made possible by
11          sending signals to nearby cell site towers.  TFO Hansen will explain that
            cellular telephone networks provide service to their customers through
12          antennas deployed across the provider's coverage area.  When the user
            places an outbound call, the handset transmits that communication over
13          the airwaves to a nearby tower antenna, which relays the call to a local
            switch for routing. Conversely, whenever another party places a call to a
14          user's cellular telephone, the network 'pages' that phone to alert the owner
            to the incoming call; if the owner answers, the call are put through and (as
15          before) carried by a tower near the phone. As a result, the system's
            awareness of a wireless phone's general whereabouts is essential to
16          providing cellular service. Spacing between antenna towers varies
            depending on a number of factors, especially terrain and population
17          density.  Except in sparsely populated areas, a typical tower will have three
            separate antenna faces (also called sectors), with each face serving a 120-
18          degree portion of the roughly circular coverage area extending out from
            the antenna mast.
19

20          Whenever a cellular phone user initiates or receives a
            communication—such as a voice call or text message—the carrier
21          routinely creates a record, including the date and exact time, of the tower
            and sector handling the communication at the start and end of the
22          communication.  *From the data collected by service providers, it is*
            *possible to determine the general geographic location area of a cell phone*
23          *at a specific time.*

24

25

26

27   Balogh Decl. Ex. B (emphasis added).  Even putting aside the lack of sufficient notice as
     to who Hansen is, this proffered testimony, like the disclosure of Luna's testimony, stands
28   in studied disregard of Rule 16(a)(1)(G).

1  idea whatsoever about what the Government's purported expert will say about "plotting" Mr.

2  Cooper's whereabouts, and he has not ability to prepare for that presentation at trial, much less

3  muster evidence to contest the hidden evidence.

4      The Court should not permit the Government's disregard for its responsibilities and for

5  Mr. Cooper's trial rights and should preclude Luna from testifying in full.

6      **C.    In the absence of preclusion, the Court should, at a minimum, limit**
       **Luna's testimony to opinions expressly presented in the Government's**
7      **April 7 Notice.**

8      The Government is likely to defend its notice as sufficient.  Should the Court accept that

9  position and deny preclusion as requested by Mr. Cooper, and should Government meet its

10 burden to establish the propriety and reliability of this testimony under *Daubert*, the Court should

11 then limit Luna's testimony to the actual opinions (if any) presented in the Government's Notice.

12 The Government cannot identify any reasoned basis why it should be permitted to introduce into

13 evidence any opinion not provided to Mr. Cooper in its expert notice.  Those "opinions", as

14 noted, do not include any purported plotting of Mr. Cooper's whereabouts on any occasion.

15 ////

16 ////

17 ////

18 ////

19 ////

20 ////

21 ////

22 ////

23 ////

24 ////

25 ////

26 ////

27 ////

28 ////

**MIL 2:     The Court should preclude introduction of any documentary evidence regarding cell-site location data that has not yet been provided to the defense.**

In February 2015, Mr. Cooper asked the Government to supplement its production of discovery regarding cell-site location information ("CSLI") as follows:

> As we discussed yesterday, we ask for you to supplement the pen register discovery that is currently subject to the defense's motion to suppress. As you can see from the examples I provide, the first attached file (the excel spreadsheet) is from the CD labeled EC13R69300158 ["Bates 158"] and when produced, provides the GPS coordinates of the cell phone tower accessed at the commencement and termination of each call. This spreadsheet reflects the prospective pen register data obtained by the Government with respect to the telephone ascribed to Elijah Cooper.
>
> In contrast, the second excel spreadsheet, which contains the historical pen register data obtained by the Government and is from CD labeled EC13R69300761 ["Bates 761"], has been produced in a different format, and does *not* contain the GPS coordinates of the cell phone tower accessed at the commencement and termination of each call. We ask you to please provide the second spreadsheet in the same format as the first. Please confirm your willingness to do the same.

Balogh Decl. Ex. D. In response, the Government foreswore that the production of CSLI data in the Bates 158 production (*i.e.*, the pen register data for February 28, 2013 through April 6, 2013, which identified the GPS coordinates of each cell tower) existed for the CSLI data produced in the Bates 761 production (*i.e.*, the pen register data for December 29, 2012 through February 27, 2013, including the critical February 5, 2015 date at issue in this case). *See* Balogh Decl. Exs. D & E.[6]

But it is impossible to square how or why Metro PCS would produce the Government the CSLI data in Bates 158 in one format that provided the CSLI coordinates, but could not do the same for the identical pen register data contained in Bates 761. The Government has never explained this impossibility.

Moreover, the Government's Notice regarding Luna's testimony proves that the Government intends to introduce additional documentary evidence about CSLI data, despite the fact that it has not produced it to Mr. Cooper. More directly, the Government's expert notice

---

[6]Based on the size of the spreadsheets and the difficulties in reproducing them in a paper format to append to the Balogh Declaration, Mr. Cooper lodges with the Court a DVD containing the Bates 158 and 761 productions so the Court may compare the information conveyed on each.

9

1  regarding CSLI proclaims that the Government has additional materials which reflect how the

2  government will "plot the cell towers utilized" by the mobile telephone ascribed to Mr. Cooper.

3  After failing to produce these materials to Mr. Cooper as requested, the Government cannot

4  surprise Mr. Cooper on the eve of trial by smuggling in these very documents at the last minute.

5            The Court should preclude the Government from violating Rule 16 in this way.

6  ////

7  ////

8  ////

9  ////

10  ////

11  ////

12  ////

13  ////

14  ////

15  ////

16  ////

17  ////

18  ////

19  ////

20  ////

21  ////

22  ////

23  ////

24  ////

25  ////

26  ////

27  ////

28  ////

**MIL 3:**      **The Court should preclude the Government from offering the proposed expert testimony of chemist Tina Wu Chang, except for the opinion that the substance she tested was in fact cocaine base, based on the Government's failure to provide sufficient notice pursuant as required by this Court's Order and by Federal Rule of Criminal Procedure 16(a)(1)(G).**

On April 7, 2015, the Government provided its Rule 16(a)(1)(G) notice disclosing the expert opinions it will seek to introduce through the testimony of chemist Tina Wu Chang.  ECF No. 127; *see also* Balogh Decl. Ex. G.  Because the legal standards that govern the disclosure of expert reports as set forth with respect to Motion In Limine No. 1, *see supra,* apply to this motion, Mr. Cooper does not repeat that work here.

In sum, the sole opinion the Government identifies it will introduce through Wu Chang is her "conclusion that the substance she tested [from the February 5, 2013 seizure] is in fact cocaine base." *Id*.  While the Government would like her to testify about the "weight and purity" of the seized substance, it failed to disclose what Wu Chang's opinions are on that subject.  Accordingly, for the reasons set forth above, the Court should preclude the Government from offering through Wu Chang any opinion not expressly set forth in the Government's disclosure.

////
///
///
////
////
////
////
////
////
////
////
////
////

11

**MIL 4:**     **The Court should preclude the Government from offering the proposed expert testimony of chemist Jason Otis, except for his opinion that the substance he tested was in fact cocaine base, based on the Government's failure to provide sufficient notice pursuant as required by this Court's Order and by Federal Rule of Criminal Procedure 16(a)(1)(G).**

On April 7, 2015, the Government provided its Rule 16(a)(1)(G) notice disclosing the expert opinions it will seek to introduce through the testimony of chemist Jason Otis. ECF No. 127; *see also* Balogh Decl. Ex. G. Because the legal standards that govern the disclosure of expert reports as set forth with respect to Motion In Limine No. 1, *see supra.,* apply to this motion, Mr. Cooper does not repeat that work here.

In its notice, the Government disclosed Mr. Otis's qualifications as follows:

> Jason Otis is a Criminalist II at the Alameda County Sheriff's Office Crime Laboratory, San Leandro, California. Mr. Otis has held that position since DATE. Before working for Alameda County, Mr. Otis was a JOB. A copy of his Statement of Qualification is attached as Exhibit 3, *Curriculum Vitae of Jason Otis*. Mr. Otis worked as a forensic chemist for JOB? DATE?. Before working for the JOB he worked for JOB, from DATE to DATE Mr. Otis has been a forensic chemist for nearly NUMBER years.

ECF No. 127; *see also* Balogh Decl. Ex. G (errors in punctuation and otherwise from original). Contrary to the Government's assertions, it did not provide any curriculum vitae for Mr. Otis. *See* ECF No. 127.

In sum, the sole opinion the Government identifies it will introduce through Otis is his "conclusion that the substance he tested [from a March 3, 2013 seizure from Henry Tobias] is in fact cocaine base." *Id.* While the Government would like him to testify about the "weight and purity" of the seized substance, it failed to disclose what Otis's opinions are on that subject. Accordingly, for the reasons set forth above, the Court should preclude the Government from offering through Otis any opinion not expressly set forth in the Government's disclosure.

////
////
////
////
////

12

**MIL 5:**     **The Court should preclude the Government from offering the**
**proposed expert testimony of DEA Special Agent David Mateer.**

On April 7, 2015, the Government provided its Rule 16(a)(1)(G) notice disclosing the

expert testimony it will seek to introduce through DEA Special Agent David Mateer. ECF No.

130; *see also* Balogh Decl. Ex. H.  Because the legal standards that govern the disclosure of

expert reports as set forth with respect to Motion In Limine No. 1, *see supra.,* apply to this

motion, Mr. Cooper does not repeat that work here.

While the Government's disclosure of Agent Mateer's testimony is better than the other

expert notices it filed (and which are challenged here), that Notice still does not offer any

opinions that are relevant to the question of whether Mr. Cooper was the driver of the Mercedes.

In sum, the Government's disclosure is limited to a detailed recitation of Mateer's work history

and responsibilities, *see* Balogh Decl. Ex. H at 1:24-2:23, assertions that "[h]e has developed

opinions about trafficking cocaine," *id*. at 2:24-3:5, and general observations about cocaine and

its sale that are either incredibly general so as to be obvious, *e.g.*, "[a] dealer is a person or people

with a financial interest in the cocaine, or cocaine base that is being sold[,]" or irrelevant to

resolution of this case, *e.g.*, "[c]ocaine is often diluted ('cut') with a variety of substances, the

most common of which is baking soda.  It is "cut" to stretch the amount of the product and

increase profits for dealers." *Id*. at 3.  Thus, the few actual opinions the Government proffers are

irrelevant, or so minimally relevant, that this testimony threatens confusion of the issues and an

undue waste of time, and thus should be excluded pursuant to Federal Rules of Evidence 401-

403.

Moreover, none of Mateer's proffered testimony should be permitted for several

additional reasons.

*First*, the subjects presented by this notice do not constitute proper expert testimony

under Federal Rules of Evidence 702 or 704.  "The Supreme Court has established that Federal

Rule of Evidence 702 charges trial judges with the task of ensuring 'that any and all scientific

testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Freeman*, 498

F.3d 893, 901 (9th Cir. 2007) quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589

1  (1993).  "The gatekeeping role exercised by district courts entails a preliminary assessment of

2  whether the reasoning and methodology underlying the testimony is valid and of whether that

3  reasoning or methodology can be applied to the facts in issue."  *Id.*  (internal quotations and

4  ellipses omitted).

5          More directly, as the Ninth Circuit made clear earlier this year, Rule "702 allows for the

6  admission of scientific, technical, or other specialized knowledge when (1) the testimony is based

7  on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and

8  (3) the witness has applied the principles and methods reliably to the facts of the case."  *United*

9  *States v. McCaleb*, 552 F.3d 1053, 1060 (9th Cir. 2009) (internal quotations omitted).  "A district

10 court may rely on various factors in evaluating such evidence, including (1) whether the theory

11 can be or has been tested; (2) whether the theory has been subjected to peer review; (3) whether

12 the error rate is known and standards exist to control the operation of the technique; and (4)

13 whether the theory has gained general acceptance."  *Id.*., citing *Daubert*, 509 U.S. at 593-94.

14         As should be plain, application of these rigorous factors shows the inadmissibility of the

15 proffered "testimony."  The notice provided reflects no "reasoning and methodology underlying

16 the testimony," much less valid reasoning and methodology.  There is no "theory" here, nor is

17 there peer review, error rate, or technique.  Rather, Agent Mateer will wants to describe his

18 anecdotal understandings of cocaine dealers in an attempt to somehow support the Government's

19 conclusion that Mr. Cooper is guilty of the charged offenses.  But nearly nothing in the

20 Government's disclosure qualifies as scientific evidence of any sort; at best, it is a short-cut to

21 convince the jury to believe what the Government hopes to prove.  Indeed, the Government will

22 be hard-pressed to present *any* methodology underlying Agent Mateer's anticipated testimony.

23 This testimony should be excluded for this basis alone, for the Government cannot establish that

24 the proffered testimony comports with the requirements of Rule 702.

25         And even if it could, any testimony by this witness should be separately inadmissible

26 pursuant to Rule 704(b), which prohibits an expert witness from "offer[ing] a direct opinion on

27 the defendant's guilt or innocence."  *Freeman*, 498 F.3d at 906.  But that, Mr. Cooper suspects, is

28 exactly what Agent Mateer hopes to offer into evidence, an (undisclosed) opinion that Mr.

14

1   Cooper drove the Mercedes.  But this is not proper expert testimony, and it should be excluded

2   for this basis too.

3          *Second*, there is no need to explain any of this purported "expert" information to the jury,

4   and the testimony should be independently excluded pursuant to Rules 401, 402 and 403.  This

5   case involves a controlled by on February 5 in which Knight appears to have been supplied twice

6   by the driver of a white Mercedes Benz.  Either that person was Mr. Cooper or not.  Nothing in

7   Agent Mateer's proposed testimony sheds any light on that question.  At a minimum, testimony

8   on these subjects will certainly involve an undue waste of time, will serve to confuse the jury

9   from the issues at hand, and will certainly be more prejudicial than probative of any fact at issue.

10  *See* Fed. R. Evid. 403.

11         As the Ninth Circuit explained in *United States v. Vallejo*, 237 F.3d 1008 (9th Cir. 2001),

12  *amended by* 246 F.3d 1150, testimony from so-called experts about "drug-trafficking"

13  organizations is suspect, and subject to a rigorous analysis pursuant to Rules 401 and 403.  *Id.*, at

14  1015-16; *see also United States v. McGowan*, 274 F.3d 1251, 1254 (9th Cir. 2001) (reversing

15  based on improper admission of expert testimony in violation of *Vallejo*).  As the Court

16  explained, while expert testimony may have some relevance "to help the jury understand a

17  *complex* heroin distribution scheme involving twenty to twenty-five members of a structured

18  criminal enterprise[,]" *id.* at 1016 (emphasis added), that circumstance does not apply to simple

19  matters like this case.

20         In short, there is no complexity here, and indeed no "structured criminal enterprise." *See*

21  *also Freeman*, 398 F.3d at 906 (expert testimony may be appropriate where it "helps the jury to

22  understand *complex* criminal activities[.]") (emphasis added) (internal citation and quotation

23  omitted).  Accordingly, *Vallejo* condemns the use of such testimony in a case such as this.  237

24  F.3d at 1017 ("Agent Ajioka's testimony concerning the structure and modus operandi of drug

25  trafficking organizations was not relevant to the Government's case against Vallejo.  Nor was it

26  needed to assist the jury's understanding of a complex criminal case.  Agent Ajioka testified to

27  the different roles played by various members of drug trafficking organizations, and although he

28  did not case Vallejo in a particular role, the implication of his testimony was that Vallejo had

15

1  knowledge of how the entire organization operated, and thus knew he was carrying the drugs.  To

2  admit this testimony on the issue of knowledge, the only issue in the case, was unfairly

3  prejudicial, and an abuse of discretion under Rule 402.")

4          For these reasons and each of them, the Court should preclude this proffered testimony.

5  ////

6  ////

7  ////

8  ////

9  ////

10 ////

11 ////

12 ////

13 ////

14 ////

15 ////

16 ////

17 ////

18 ////

19 ////

20 ////

21 ////

22 ////

23 ////

24 ////

25 ////

26 ////

27 ////

28 ////

**MIL 6:**  **The Court should preclude the Government from offering the proposed expert testimony of Barry Stewart based on the Government's failure to provide sufficient notice pursuant as required by this Court's Order and by Federal Rule of Criminal Procedure 16(a)(1)(G).**

On April 7, 2015, the Government provided its Rule 16(a)(1)(G) notice disclosing the expert testimony it will seek to introduce through Barry Stewart.  ECF No. 129; *see also* Balogh Decl. Ex. I.  Because the legal standards that govern the disclosure of expert reports as set forth with respect to Motion In Limine No. 1, *see supra.,* apply to this motion, Mr. Cooper does not repeat that work here.

Like the other expert disclosures provided by the Government, *see supra.*, the disclosures regarding Mr. Stewart are woefully deficient.  To begin, the "curriculum vitae" the Government produced for Stewart is no such thing; rather, it is simply provided Stewart's current job description.  *See* Balogh Decl. Ex. I.  It tells us nothing of his education and training.

Worse, the Government provides no summaries of the so-called expert opinions it will tender from Stewart, again disclosing on the subject matter of his testimony, as follows:

> B.  Mr. Stewart's Expert Opinion
>
> Mr. Stewart did not perform any of the work on the wire-taps in this case. However, Stewart is an expert in the equipment used for the wire-taps in this case and is expected to testify about: (1) how that equipment works; (2) the systems for preventing mistakes in the installation or maintenance of the wire-tap that may result in the interception of communications from the wrong telephone; and (3) the systems for preventing tampering or alteration of the recordings of the intercepted communications.

Balogh Decl. Ex. I.  But, of course, these disclosures fall short of compliance with Rule 16(a)(1)(G), as set forth above.

And finally, the Government refused to disclose—as required—the bases for Stewart's undisclosed opinions.  *See* Balogh Decl. Ex. I; *see also* Fed. R. Crim. P. 16(a)(1)(G).  As a result, Mr. Cooper cannot assess the reliability of any methods utilized by Stewart to evaluate the propriety of his testimony under *Daubert*, nor can the Court exercise its gate-keeping function because the Government has refused to disclose the necessary information.

///

17

1    The Court should not accept the Government's disregard for its responsibilities

2  and for Mr. Cooper's trial rights and should preclude Stewart from testifying in full.  In

3  the alternative, if the Government can establish the propriety and reliability of this

4  testimony under *Daubert*, the Court should limit his testimony to the opinions actually

5  disclosed.

6  ////

7  ////

8  ////

9  ////

10  ////

11  ////

12  ////

13  ////

14  ////

15  ////

16  ////

17  ////

18  ////

19  ////

20  ////

21  ////

22  ////

23  ////

24  ////

25  ////

26  ////

27  ////

28  ////

1

**MIL 7:      The Court should preclude the Government from offering any alleged co-conspirator statements because the Government did not produce summaries of any statements it would seek to admit as required by Local Rule 16-1 and this Court's Scheduling Order.**

2

3

Local Rule 16-1(c)(4) requires the Government to produce to the defense "[a] summary

4

of any statement the government intends to offer under F. R. Evid. 801(d)(2)(E) in sufficient

5

detail that the Court may rule on the admissibility of the statement."  Rule 16-1 is valid and has

6

the force of law.  *See* Fed. R. Crim. P. 57.  The Supreme Court has long held that:

7

8              [a] duly-authorized rule of court has the force of law, and is
              binding upon the court as well as upon parties to an action, *and*

9              *cannot be dispensed with to suit the circumstances of any*
              *particular case.*  The courts may rescind or repeal their rules,
              without doubt, or, in establishing them, may reserve the exercise of

10             discretion for particular cases.  But the rule, once made, without
              any such qualification, must be applied to all cases which come

11             within it, until it is repealed by the authority which made it.

12

*Rio Grande Irrigation & Colonization Co. v. Gildersleeve*, 174 U.S. 603, 608-09 (1889)

13

(emphases added) (quotation marks omitted).

14

The Ninth Circuit similarly has held that "[l]ocal rules have the force of law and are

15

binding upon the parties and upon the court, and a departure from local rules that affects

16

substantial rights requires reversal."  *Professional Programs Group*, 29 F.3d at 1353 (quotation

17

marks omitted).  In other words, the Government is bound by Local Rule 16-1 and is not free to

18

ignore it.

19

On February 27, 2015, the Court ordered the Government to provide all Local Rule 16-1

20

discovery to Mr. Cooper on or before April 7, 2015.  *See* ECF No. 115.  Prior and through April

21

7, 2015, the Government provided no Local Rule 16-1(c)(4) summaries to Mr. Cooper.  Balogh

22

Decl. ¶ 9.  Although the Government did email a letter to Mr. Cooper at 5:08 p.m. that evening,

23

*see* Balogh Decl. Ex. F, that letter did not set forth any summaries as required by Local Rule 16-

24

1(c)(4).  Balogh Decl. ¶ 9.

25

On the afternoon of April 8, 2015—after the deadline imposed by the Court—Mr. Cooper

26

received the package of material by which reported was made "pursuant to Judge Illston's minute

27

order of February 27, 2015."  *See* Balogh Decl. ¶ 7 & Ex. F.  That production contained **no**

28

**summaries** of any purported co-conspirator statements.  *Id.* ¶ 9.  As a result, the Government has

19

1    essentially represented it intends to offer none, and in any case, the Court should enforce its

2    pretrial order and admit none.

3    ////

4    ////

5    ////

6    ////

7    ////

8    ////

9    ////

10   ////

11   ////

12   ////

13   ////

14   ////

15   ////

16   ////

17   ////

18   ////

19   ////

20   ////

21   ////

22   ////

23   ////

24   ////

25   ////

26   ////

27   ////

28   ////

**MIL 8:**     **The Court should preclude the Government from offering any evidence pursuant to Fed. R. Crim. P. 404(b) because the Government did not produce summaries of any such evidence it would seek to admit as required by Local Rule 16-1 and this Court's Scheduling Order.**

Local Rule 16-1(c)(3) requires the Government to produce to the defense "[a] summary of any evidence of other crimes, wrongs or acts which the government intends to offer under F. R. Evid. 404(b), and which is supported by documentary evidence or witness statements in sufficient detail that the Court may rule on the admissibility of the proffered evidence[.]"  On February 27, 2015, the Court ordered the Government to provide all Local Rule 16-1 discovery to Mr. Cooper on or before April 7, 2015.  *See* ECF No. 115.

Prior and through April 7, 2015, the Government provided no Local Rule 16-1(c)(4) summaries to Mr. Cooper.  Balogh Decl. ¶ 9.  Although the Government did email a letter to Mr. Cooper at 5:08 p.m. that evening, *see* Balogh Decl. Ex. F, that letter did not set forth any summaries as required by Local Rule 16-1(c)(3).  Balogh Decl. ¶ 9.

On the afternoon of April 8, 2015—after the deadline imposed by the Court—Mr. Cooper received the package of material by which reported was made "pursuant to Judge Illston's minute order of February 27, 2015."  *See* Balogh Decl. ¶ 7 & Ex. F.  That production contained **no summaries** of any purported Rule 404(b) evidence.  *Id*. ¶ 9.  As a result, the Government has essentially represented it intends to offer none, and in any case, the Court should enforce its pretrial order and admit none.

////
////
////
////
////
////
////
////
////

21

1   **MIL 9:        The Court should preclude all evidence regarding the activities of Henry**
2   **Tobias, who is not an alleged co-conspirator of Mr. Cooper and because the**
    **Government's April 7 discovery production is untimely.**

3        The Government's April 7, 2015 production provides a wealth of evidence regarding

4   Henry Tobias.  *See* Balogh Decl. Ex. F.  But the grand jury, in the second superseding indictment

5   returned the same day, did *not* allege Tobias to be a co-conspirator of Mr. Cooper.  ECF No. 126.

6        The Fifth Amendment guarantees a criminal defendant "the right to stand trial only on

7   charges made by a grand jury in its indictment."  See *United States v. Garcia-Paz,* 282 F.3d

8   1212, 1215 (9th Cir. 2002).  "The very purpose of the requirement that a man be indicted by a

9   grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting

10  independently of either prosecuting attorney or judge."  *Cecil,* 608 F.2d 1294, 1296 (1979).

11  "After an indictment has been returned and criminal proceedings are underway, the indictment's

12  charges may not be broadened by amendment, either literal or constructive, except by the grand

13  jury itself."  *United States v. Adamson,* 291 F.3d 606, 614 (9th Cir. 2002), quoting *Stirone v.*

14  *United States,* 361 US 212, 215-16 (1960).

15       Because Mr. Cooper is not alleged to have conspired with Tobias, the evidence of

16  Tobias's purported activities is irrelevant, and the evidence should be excluded.  *See* Fed. R.

17  Crim. P. 16.  So too, because Mr. Cooper demanded and litigated his right to discovery "upon a

18  defendant's demand" long ago, *see e.g.*, Balogh Decl., Ex. A & ECF No. 32, the Government's

19  11th hour production of Rule 16 materials is untimely and unjustified, and the Court should

20  preclude the introduction of the Tobias evidence on this basis as well.

21  ////
22  ////
23  ////
24  ////
25  ////
26  ////
27  ////
28  ////

                                            22

**MIL 10:     The Court should preclude the Government from entering any evidence or commentary regarding gangs.**

In the discovery materials provided to Mr. Cooper, the United States has made a number of references to gangs, including Mr. Cooper's alleged association with the so-called "West Mob gang."  At trial, the Government may attempt to introduce evidence of or comment on these or other gang-related matters.  The Court should disallow it.

Most fundamentally, this is not a gang case, and as such, any and all evidence concerning gangs is irrelevant.  Fed. R. Evid. 401, 402.  Mr. Cooper denies that he is in a gang, and is not aware of any allegation, let alone evidence, to the contrary.  More to the point, because there is nothing about the drug charges that turns on gang membership or gang affiliation, any and all evidence or commentary concerning gangs is irrelevant and should be excluded.  Fed. R. Evid. 402.

Evidence or commentary regarding gang-related topics would also create "a risk that the jury will [probably] equate gang membership with the charged crime[]," thereby resulting in undue prejudice under Federal Rule of Evidence 403.  *Kennedy v. Lockyer*, 379 F.3d 1041, 1055-56 (9th Cir. 2004) (quotation omitted).  In *Kennedy*, the Ninth Circuit observed that "evidence relating to gang involvement will almost always be prejudicial and will constitute reversible error" if "proffered to prove a substantive element of the crime[.]" *Id.*  The court thus recognized that in the vast majority of cases, evidence concerning gangs deeply injures the defendant's standing in the eyes of the jury while offering little or no probative value on a contested matter.  This Court should therefore exclude all testimony, commentary, and other forms of evidence regarding gangs.

This ruling should include an Order that any testifying officers and agents omit mention of any assignment to or involvement of the Gang Task Force or any other assignment which references investigations and/or prosecutions of gangs.  *See* Fed. R. Evid. 401-403.

////

////

////

23

**MIL 11:**    **The Court should preclude the Government from offering evidence regarding any law enforcement officer's prior knowledge of and/or interactions with Mr. Cooper.**

At trial, the Government may attempt to present evidence that certain investigating officers had prior knowledge of and interactions with Mr. Cooper. The Court should enter an Order excluding such evidence.

Nothing about the officers' knowledge of Mr. Cooper will make it more or less likely that Mr. Cooper committed the charged offenses. The Court should exclude thus this evidence as irrelevant. Fed. R. Evid. 401, 402.

Moreover, the Ninth Circuit has long recognized "the possibility of prejudice to the defendant" under Rule 403 when evidence portrays the defendant "as a person subject to a certain degree of police scrutiny." *United States v. Butcher*, 557 F.2d 666, 669 (9th Cir. 1977). In other words, it would unfairly prejudice Mr. Cooper for the Court to permit the Government to introduce evidence portraying Mr. Cooper as a something of a "usual suspect" in the neighborhood who was well-known to the local police. Particularly given the high degree of prestige typically afforded to law enforcement witnesses, the Court should exercise its discretion to exclude Government evidence regarding the officers' prior knowledge of and/or contacts with Mr. Cooper.

////
////
////
////
////
////
////
////
////
////
////

1  **MIL 12:**     **The Court should preclude the introduction of hearsay evidence as reflected on the Government's exhibit list; the Court should also limit the Government's evidence to the evidence disclosed on its exhibit list.**

2

3      On March 26, 2015, at a specially-held hearing, the Court ordered the Government to

4  produce its exhibits to Mr. Cooper, as follows:

5          The government shall provide a copy of the trial exhibits to defense by
           noon on April 9, 2015.

6  *See* ECF No. 122.

7      The Government didn't comply.  Rather than provide "a copy of the trial exhibits" to Mr.

8  Cooper by noon on April 9, 2015, the Government instead provided an exhibit list.  Balogh Decl.

9  Ex. J.  As set forth therein and as highlighted on Exhibit J, the Government intends to introduce

10 multiple text messages *to* Knight from unidentified persons.  *See id.*, Ex. J.  So too, the

11 Government intends to (1) identify these persons as Knight's "customers" and (2) present the

12 messages it ascribes to them to the jury.

13     Mr. Cooper objects based upon the confrontation clause of the Sixth Amendment and on

14 hearsay grounds.  The Government has not presented any competent evidence to establish that

15 these persons or any of them were, in fact, Knight's customers, and even the Government's

16 proposed DEA expert has not offered as expert opinion any claim that they were.  *See id.*, Ex. H.[7]

17     Similarly, these individuals out-of-court statements in text messages are classic hearsay

18 which the Government intends to offer for the truth asserted therein.  The Court should exclude

19 each of those statements on confrontation and hearsay grounds.[8]

20     So too, the Court should enforce its pretrial Order and limit the Government to the

21 exhibits it disclosed as of noon, April 9, 2015.

22 ////

23

24 ────────────────

25     [7]Mr. Cooper recognizes that the Government may call the so-called customers at trial.

26     [8]While Mr. Cooper has objected to the inclusion of any alleged co-conspirator statements

27 based on the Government's failure to disclose any as directed by the Court, these statements would not even qualify for that rule had they been timely presented because a customer of a drug

28 trafficker is not his co-conspirator.  *See United States v. Lennick*, 18 F.3d 814, 819 (9th Cir. 1994)

**MIL 13:** **The Court should enter an Order directing the Government to inform its witnesses of each of the Court's pretrial rulings, and to confirm that it has done so before the commencement of trial.**

The Court should also direct the Government to inform its witnesses of the ruling on this and every other motion in limine.  In a recent trial before Judge Alsup, the Government introduced evidence previously excluded by the Court, and upon objection, explained that the errant testimony occurred because it had failed to admonish its witnesses of the Court's pretrial rulings.  *See e.g.*, *United States v. Gibson*, 11 Cr. 734 WHA, ECF No. 149 at 12:5-17:23.  The Government should be required to take much better care in this case, and to confirm that it has admonished its witnesses of the Court's rulings.

////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////

26

**MIL 14:      The Court should preclude the Government from presenting the Second Superseding Indictment to the petit jury**.

The Second Superseding Indictment is not evidence of anything. It presents accusations, and nothing more.  While the Court maintains discretion as to whether to submit the Indictment to the petit jury, *see e.g.*, *Shayne v. United States*, 255 F.3d 739 (9th Cir. 1958), the Jury Instructions Committee of the Ninth Circuit cautions against it.  *Ninth Circuit Jury Procedure Manual*, § 4.6.  Such caution should be exercised in this case.  The Court can fashion both preliminary and closing jury instructions identifying the allegations raised in this case, and presenting the issues to be determined by the petit jury. For these reasons, the Court should exercise its discretion with great caution, and withhold the Indictment from presentation to the petit jury.

////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////

**MIL 15:        The Court should permit Mr. Cooper to dress in civilian clothes for trial.**

Mr. Cooper remains in custody pending the resolution of this case.  He asks the Court for authorization to wear civilian clothes during trial rather than jail-issued clothing.  As the Supreme Court has recognized, the right to wear street clothes during trial stems from the presumption of innocence and the right to a fair trial.  *See Estelle v. Williams*, 425 U.S. 501, 503-04, 512 (1976).  With this Court's permission, and in cooperation with the United States Marshals, Mr. Cooper proposes to supply his own civilian clothing for trial.

////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////

28

**CONCLUSION**

As Mr. Cooper continues to prepare for trial, he may discover additional issues he believes should be addressed pretrial to ensure the fair and efficient adjudication by jury of this dispute.  Should that circumstance arise, Mr. Cooper shall alert the Government and this Court as soon as practicable so that any such issues may be addressed fully prior to the commencement of trial.

For the reasons set forth above, Mr. Cooper respectfully asks the Court to grant each of his motions in limine.

.                                                  Respectfully submitted,

DATED: April 14, 2015                              COLEMAN, BALOGH & SCOTT LLP


                                                        */s/ E A Balogh*
                                                   By: ETHAN A. BALOGH
                                                   235 Montgomery Street, Suite 1070
                                                   San Francisco, CA 94104

                                                   Attorneys for Defendant
                                                   ELIJAH COOPER

**PROOF OF SERVICE**

I, Ethan A. Balogh, certify that, on April 14, 2015, I served all parties in this matter by causing the foregoing Trial Memorandum and Motions *In Limine* to be filed electronically, as set forth by Local Rule 5-1.


Dated: April 14, 2015                                    */s/ E A Balogh*
                                                      ETHAN A. BALOGH